<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KHALI MAJEED NELSON,<br><br>        Plaintiff,<br><br>    v.<br><br>OFC. JAMES KARINS, et al.,<br><br>        Defendants. | Civil No. 12-1779 (JBS-AMD)<br><br><u>**MEMORANDUM OPINION**</u> |

**IT APPEARING THAT:**

1.  On March 16, 2010, an individual referring to himself as "Khali Majeed Nelson" ("Khali") submitted for filing a civil complaint that gave rise to <u>Nelson v. New Jersey</u>, Civil Action No. 10-1374 (JBS) ("<u>Nelson-I</u>"). Khali indicated that he was a pre-trial detainee held at the Atlantic County Justice Facility ("ACJF") and that his prison identification number was "182019." <u>See</u> <u>Nelson-I</u>, Docket. Khali's complaint in <u>Nelson-I</u> arrived unaccompanied by his filing fee or by a complete <u>in forma pauperis</u> ("IFP") application. <u>See</u> <u>id.</u>, Docket Entry No. 1. Therefore, this Court denied Khali IFP status without prejudice. <u>See</u> <u>id.</u>, Docket Entries Nos. 2 and 3. Thereafter, Khali filed a curative IFP application [Docket Entry No. 4], but the Clerk's mailing of this Court's order directing reopening of <u>Nelson-I</u> was returned as undeliverable [Docket Entries Nos. 5 and 6], and

    – on June 18, 2010, the Court dismissed <u>Nelson-I</u> on the grounds of failure to prosecute. <u>See</u> Docket Entry No. 7.

2. On February 29, 2012, the Clerk received another civil complaint. <u>See</u> <u>Nelson v. Atlantic County</u>, Civil Action No. 12-1231 (JBS) ("<u>Nelson-II</u>"), Docket Entry No. 1.  That other civil complaint was submitted by an individual who referred to himself as "Khaleaf Majeed Nelson" ("Khaleaf") and indicated that he was a pre-trial detainee held, too, at the ACJF, although his prison identification number was "183904."  <u>See</u> <u>Nelson-II</u>, Docket.  Much like the civil complaint submitted by Khali in <u>Nelson-I</u>, the civil complaint submitted by Khaleaf in <u>Nelson-II</u> arrived unaccompanied by the applicable filing fee or a complete IFP application.  <u>See</u> <u>id.</u>, Docket Entry No. 1.  Therefore, like in <u>Nelson-I</u>, this Court denied Khaleaf IFP status without prejudice.  <u>See</u> <u>id.</u>, Docket Entry No. 2.  For the purposes of determining whether Khaleaf qualified for conditional IFP status on the basis of being exposed to imminent danger to his health or life, the Court surveyed Khaleaf's assertions raised in <u>Nelson-II</u> and summarized them as follows:

> [Khaleaf's] Complaint asserts that, on January 25, 2012, [Khaleaf's] brother was subjected to: (a) a search without probable cause; and (b) excessive force, both in violation of [Khaleaf's] brother's Fourth Amendment rights; [Khaleaf] maintains that witnessing these events caused him severe emotional distress.  [Khaleaf stated that he was] seek[ing] "justice to prevent policemen from

>   stopping innocent people and ridiculing them" and
>   monetary damages in an unspecified amount defined
>   as "nice settlement from the city and the State."

Id. at 2 (citations to docket and original brackets omitted).[1]  In addition, while assessing Khaleaf's IFP application, the Court noted:

>   [Khaleaf] asserts that – *while being incarcerated*
>   – he, nonetheless, keeps receiving $210 in cash
>   and $200 in food-stamps, as welfare assistance.
>   Moreover, while [Khaleaf's] Complaint suggests
>   that he is receiving the aforesaid assistance
>   because of *his obligation to support his two
>   children,* [Khaleaf's] affidavit of poverty states
>   that he uses these funds and food-stamps for
>   purposes *other* than providing for his children,
>   namely: (a) to support his mother (by, allegedly,
>   giving her these $200 in food-stamps); and (b) to
>   channel some of the cash funds to his brother
>   (explaining his election to so channel these finds
>   by stating that his "brother had 2 surgeries
>   recently for a bone infection").  However, at this
>   juncture, the Court need not determine whether the
>   statements provided in [Khaleaf's] affidavit of
>   poverty qualify him for in forma pauperis status,
>   since [Khaleaf's] failure to submit his certified
>   account statement already precludes [Khaleaf] from
>   obtaining such status at the instant juncture.

Id. at 3-4, n. 1 (emphasis in original).

3.  On March 22, 2012, that is, about two weeks after receiving the civil complaint in Nelson-II, the Clerk received one more civil complaint; that submission gave rise to the instant matter.  See Instant Matter ("Nelson-III"), Docket Entry No. 1.   The complaint in Nelson-III was submitted by

---

[1]  No statement in Khaleaf's civil complaint indicated that Khaleaf himself was subjected to excessive force or to an undue search.  See Nelson-II, Docket Entry No. 1.

3

an individual who, like the plaintiff in <u>Nelson-I</u>, referred to himself as "Khali Majeed Nelson" (hereinafter, "Majeed" – to be distinguished from "Khali") and stated that he, too, was held at the ACJF, although he had a prison identification number different from those of Khali and Khaleaf's, <u>i.e.</u>, "202907."  <u>See</u> <u>Nelson-II</u>, Docket.  The civil complaint submitted in <u>Nelson-III</u> arrived accompanied by a duly executed IFP application.[2]  <u>See</u> <u>id.</u>, Docket Entry No. 1-1.  The complaint in <u>Nelson-III</u> alleged:

> On 1/25/12, [Majeed] and [Majeed's] twin brother arrived in A[tlantic] C[ity] about 11:15 - 11:30 pm, and walked 4 blocks from the terminal to [Majeed's] twin's muslimah [sic] friend apartment. She offered [them] shelter for the night and hospitality, [as] far as cooking some shrimps but [they] wanted more than just shrimps.  A little after midnight on the 26th [they] briefly intended to go to McDonald[']s which was a block away from the terminal.  A block and a half into [their] walk a police squad car ultimately stopped besides [them] on Ar[c]tic Avenue . . . .  The officers jumped out on [them], as [the officers'] 1st words were, "we're looking for guns."  [Majeed] felt racial[ly] profiled because [Majeed] and [Majeed's] brother are the only two black men walking ar[c]tic Ave[nue] . . . and just became suspects.  Did these cops get a dispatch on their radio saying someone was robbed at gunpoint near [Majeed and Majeed's brother's] location?  The officers were treating [Majeed and Majeed's brother] as if [they a]re not just tourists visiting their hometown, and [Majeed and Majeed's brother] committed a crime demanding that [Majeed

---

[2]  The application in <u>Nelson-III</u> did not state that Majeed was receiving any funds in the form of transfer of welfare assistance received by his brother.  <u>See</u>, <u>generally</u>, <u>Nelson-III</u>, Docket Entry No. 1-1.

4

>  and Majeed's brother] put [their] hands on [their]
>  heads. . . . [Majeed] did not comply fast enough
>  to Of[ficer] Abrams['] demands, so [Officer
>  Abrams] punched [Majeed] in the face by [Majeed's]
>  left eye.  Then [Majeed] believe[s that Officer
>  Abrams] and Of[ficer] Karins slammed [Majeed] on
>  the ground and handcuffed [Majeed].  This is
>  racial profiling and assault.  . . . [Majeed]
>  would like all charges against [him] to be
>  exon[e]rated or dismissed by lack of prosecution
>  in plain error, and [Majeed] need[s] to be
>  compensated for [his] injuries] and every day [he]
>  suffered in [ACJF] away from [his] family and
>  loved ones.

Nelson-III, Docket Entry No. 1, at 4-6.

4. The submissions made in Nelson-I, Nelson-II and Nelson-III suggest, though without allowing the Court to determine the same with absolute certainty, that: (a) Khali and Majeed might be the same person (and the difference in Khali and Majeed's prison numbers stated in Nelson-I and Nelson-III is merely a result of this person's different incarcerations, one in 2010, and another in 2012); and (b) Khaleaf might be that person's twin brother.[3]

---

[3] The records of New Jersey Department of Corrections indicates that a certain individual known as *both* "Khali M. Nelson" and "Khaleaf M. Nelson," born on January 12, 1985, was convicted in the Superior Court of New Jersey, Law Division, Atlantic County, on the basis of  crimes of assault and possession of controlled substances committed on March 16, 2006, and also distributing controlled substances on school property on August 24, 2007.  See <<https://www6.state.nj.us/DOC_Inmate/details?x=1400386&n=0>>.  The records of New Jersey Department of Corrections also indicate that an individual known as "Khalid Nelson" and born on July 21, 1976, was convicted for distributing controlled substances on school property.  See <<https://www6.state.nj.us/DOC_Inmate/details?x=1064058&n=1>>.

5

5. While noting its concern with the discrepancy in information provided in the seemingly interrelated Majeed and Khaleaf's IFP applications, this Court will grant Majeed conditional IFP status on the basis of his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g).  See 28 U.S.C. § 1915(a).  The Court, therefore, will order the Clerk of the Court to file the Complaint in Nelson-III, while directing Majeed to file a written statement clarifying: (a) whether he and Khali is the same person; (b) whether Khaleaf is his twin brother who was involved in the events asserted in Majeed's Complaint; and (c) whether Majeed receives any financial assistance from Khaleaf, which Majeed omitted to stated in his IFP application.

6. At this time, the Court must review Majeed's Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A.  In determining the sufficiency of a pro se complaint, the Court must be mindful

---

The Court has no certainty how these "Khali M. Nelson" a/k/a "Khaleaf M. Nelson" and "Khalid Nelson" relate, if at all, to Khali, Khaleaf and Majeed who submitted their complaints in Nelson-I, Nelson-II and Nelson-III.

6

to construe it liberally in favor of the plaintiff.  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  Therefore, the Court must "accept as true all of the allegations in the complaint."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  However, the Supreme Court has emphasized that, when assessing the sufficiency of any civil complaint, a court must distinguish factual contentions – which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted – from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Thus, the screening court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Id. at 1950.  Correspondingly, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]' – 'that the pleader is entitled to relief.' . . . This 'plausibility' determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

7. Here, Majeed asserts three lines of claims, namely, that: (a) a "racial profiling" claim; (b) an excessive force claim; and (c) a false arrest claim. See, generally, Nelson-III, Docket Entry No. 1. In connection with this last claim, Majeed raises a related challenge, maintaining that he was searched without probable cause. See id.

8. Selective enforcement of the law, colloquially referred to as "racial profiling," is a violation of the Equal Protection Clause, since the Clause "prohibits selective enforcement of the law based on considerations such as race." Whren v. United States, 517 U.S. 806, 813 (1996). As the Court of Appeals explained in Carrasca v. Pomeroy, 313 F.3d 828 (3d Cir. 2002), "[even t]he fact that there was no Fourth Amendment violation does not mean that one was not discriminatorily selected for enforcement of a law. . . . [E]qual protection claims under the Fourteenth Amendment require a wholly separate analysis from . . . claims under the Fourth Amendment." Id. at 836 (internal citations omitted); accord Gibson v. Superintendent of N.J. Dep't of Law and Pub. Safety, 411 F.3d 427, 440-41 (3d Cir. 2005). "To prevail on an equal protection claim in the racial profiling context, [a p]laintiffs would have to show that the challenged law enforcement practice had a discriminatory effect and [in addition] was motivated by a discriminatory

purpose." Carrasca, 313 F.3d at 834.  For the purposes of the first prong of this inquiry, the plaintiff must "show that [(s)he] is a member of a protected class and [in addition,] that [(s)he] was treated differently from similarly situated individuals in an unprotected class." Bradley v. U.S., 299 F.3d 197, 206 (3d Cir. 2002).  The second prong of this inquiry was expressly examined by the Supreme Court in Iqbal, where the Court pointed out that the plaintiff asserting an equal protection claim "must plead [facts showing] that the defendant acted with a discriminatory purpose" to permit the court's reasonable inference that the government-official defendant acted "for the purpose of discriminating on account of race." Iqbal, 556 U.S. at 676-77.

9. Here, Majeed's Complaint merely asserted that he "felt racial[ly] profiled" because he and his brother were the only African-Americans pedestrians walking through a quiet residential area of Atlantic City after midnight.  Majeed's Complaint neither asserts that all other pedestrians were of a different race, nor even suggests that there were any other pedestrians walking through the same area at the same hour.  Therefore, Majeed's Complaint fails to meet the first prong of the selective-enforcement-of-the-law test.  Moreover, if the Court were to turn its attention to the

second prong of the test, Majeed's Complaint fares even worse, since it fails to offer this Court a single fact permitting reasonable inference that Defendants acted "for the purposes of discriminating on the basis of race." In fact, all Majeed pleads is that he experienced a feeling of being "racially profiled"; however, his purely subjective feeling, expressing nothing bit a bold conclusion, cannot operate as plausible factual allegation required by Iqbal. Therefore, Majeed's allegations of "racial profiling" will be dismissed for failure to state a claim upon which relief can be granted.

10. However, Majeed's other two lines of claims do not warrant sua sponte dismissal even though his Complaint came dangerously close to pleading Majeed out of court. Accord Gutierrez v. Peters, 111 F.3d 1364, 1374 (7th Cir. 1997) ("[A] plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts. . . . Allegations in a complaint are binding admissions . . . and admissions can of course admit the admitter to the exit from the federal courthouse") (quoting Jackson v. Marion County, 66 F.3d 151, 153 (7th Cir. 1995)).

11. The Fourth Amendment's objective reasonableness standard controls where a police officer allegedly uses excessive

force during an arrest.  See Graham v. Connor, 490 U.S. 386, 397 (1989).  To establish a claim for excessive force as an unreasonable seizure, a plaintiff must show that: (a) a seizure occurred; and (b) that seizure was unreasonable.  See Rivas v. City of Passaic, 365 F.3d 188, 198 (3d Cir. 2004) (citing Curley v. Klem, 298 F.3d 271, 279 (3d Cir. 2002)).  Proper application of this objective reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  See Saucier v. Katz, 533 U.S. 194, 205 (2001).  Ultimately, "the question is whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them."  Graham v. Connor, 490 U.S. 386, 397 (1989).

12. Here, Majeed asserted that Defendants' actions were not only consistent with their good faith belief that Majeed and his brother were armed but also indicative of Defendants' acting upon an information that Majeed and his brother had just committed an armed robbery and presented an immediate threat to the safety of Defendants and the general public.  Read jointly with Majeed's admission that failed to promptly

11

      comply with Defendants' directive to place Majeed's hands on his head, the facts asserted by Majeed come close to suggesting that Officer Abrams was justified in his decision to apply physical force to Majeed in order to handcuff and arrest him.  However, taking notice of Majeed's statements suggesting that neither he nor his brother were attempting to evade arrest or flee from the place of the incident, and being mindful of Majeed's status of pro se litigant (and, hence, of the possibility that Majeed omitted to detail facts illustrating the disparity by the physical force applied to him and the lack of threat he was presenting), the Court finds that Majeed's excessive force claim does not warrant sua sponte dismissal.[4]  The Court, therefore, will direct Defendants answer as to this claim.

13. In the same vein, Majeed's false arrest claim does not warrant sua sponte dismissal.  The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no

---

[4] Majeed's Complaint is silent as to any injury Majeed suffered as a result of allegedly excessive force. See, generally, Nelson-III, Docket Entry No. 1.  However, the complaint submitted by Khaleaf in Nelson-II asserts that Khaleaf's brother (who might have been Majeed) was "transported to A[tlantic] C[ity M]edical [C]enter" at 2 a.m., that is, about an hour and a half after the incident.  See Nelson-II, Docket Entry No. 1, at 2.

Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  Correspondingly, the Fourth Amendment prohibits a police officer from seizing a citizen except on probable cause.  See Albright v. Oliver, 510 U.S. 266, 274-75 (1994).  Conversely, "when an officer has probable cause to believe a person committed even a minor crime . . . the balancing of private and public interests is not in doubt [and t]he arrest is constitutionally reasonable."  Virginia v. Moore, 553 U.S. 164, 171 (2008).  To establish a claim for unlawful arrest in violation of the Fourth Amendment, a plaintiff must state "the facts [showing that under the] circumstances within [the officer's] knowledge, a reasonable officer could not have believed that an offense had been or was being committed by the person to be arrested."  Mosley v. Wilson, 102 F.3d 85, 94-5 (3d Cir. 1996); accord Revell v. Port Authority of New York, New Jersey, 598 F. 3d 128, 137 n.16 (3d Cir. 2010).  "Probable cause requires more than bare suspicion, but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false."  Hughes v. Meyer, 880 F. 2d 967, 969 (7th Cir. 1989).

13

13. Here, Majeed's Complaint presents a close call, since Majeed himself states that Defendants acted as if they were proceeding on the basis of their belief that Majeed and his brother were in possession of firearm and had just committed an armed robbery.  However, since the statements made by Majeed do not indicate that Defendants' belief was more likely true than false, the Court finds Majeed's false arrest claim unsuitable for sua sponte dismissal.[5]

---

[5] A claim for false arrest "covers . . . only . . . the time of detention until the issuance of process or arraignment, and not more." Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998) (citing Heck v. Humphrey, 512 U.S. 477, 484 (1994)). Therefore, Majeed's assertions that Defendants might be liable to him for "every day [he] suffered in [ACJF]" are facially without merit: his false arrest challenges apply only a brief period of detention, i.e., from his arrest to arraignment. Analogously, Majeed's related claim of illegal search is facially deficient. "It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is . . . subject . . . to a few specifically established and well-delineated exceptions.'" Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)).  Those exceptions include search incident to arrest, search made in "hot pursuit," and search pursuant to consent. See Katz, 389 U.S. at 357-58. "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape . . . .  In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction." Chimel v. California, 395 U.S. 752, 762-763 (1969); see also United States v. Myers, 308 F.3d 251, 266 (3d Cir. 2002) (search incident to arrest is proper if it is "limited to the arrestee's person and to the area within his immediate control, meaning the area from which he might gain possession of a weapon or destructible evidence") (citation omitted).  Here, Majeed's Complaint makes it clear that he was searched incident to his arrest, and the search was limited to his person.  Therefore, his

14

14. In light of the foregoing, Majeed's claims for damages based on his false arrest and excessive force allegations will proceed past the sua sponte dismissal stage – with regard to his claim for damages.  In contrast, Majeed's claim for injunctive relief (in the form of this Court's order directing withdrawal of criminal charges currently pending against him in the state court) will be denied, pursuant to the doctrine of abstention.  See Younger v. Harris, 401 U.S. 37 (1971).  The doctrine "espouse[s] a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982) (emphasis supplied).  "Younger abstention," as the Court's teaching is known, "is premised on the notion of comity, a principle of deference and 'proper respect' for state governmental functions in our federal system."[6]  Evans v. Court of Common Pleas, Delaware

---

allegations fail to state a claim upon which relief can be granted.

[6] These comity concerns are clearly present when such ongoing state governmental function is a criminal proceeding. See Evans, 959 F.2d at 1234.  Correspondingly, federal courts rarely, if ever, entertain § 1983 complaints filed by those individuals who are challenging various aspects of their ongoing state criminal proceedings because the state court systems in this nation present such forums where criminal defendants enjoy full and ample opportunity to litigate all their federal challenges associated with their criminal prosecution, conviction and sentencing.

County, Pa., 959 F.2d 1227, 1234 (3d Cir. 1992), cert. dismissed, 506 U.S. 1089 (1993).  The specific elements of the Younger abstention are: "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims."  Schall v. Joyce, 885 F.2d 101, 106 (3d Cir. 1989) (emphasis supplied).  Here, Majeed's Complaint makes it abundantly clear that he is facing a criminal prosecution, which aim is to vindicate an important state interest (i.e., punishing criminal conduct), and New Jersey state courts offer Majeed an adequate opportunity to raise his federal claims, if any.  Therefore, Majeed's application for injunctive relief will be denied.

15. For the foregoing reasons, Majeed will be granted conditional IFP status, subject to his timely filing of a written statement clarifying his relationship to Khali and Khaleaf and averring, under penalty of perjury, that he is not receiving any funds other than those indicated in his IFP application.  The Clerk will be directed to file Majeed's Complaint, and the applicable filing fee will be assessed against him.  Majeed's challenges asserting racial profiling and illegal search will be dismissed, as facially meritless.  His false arrest and excessive force claims will

be proceeded past the <u>sua</u> <u>sponte</u> dismissal stage, and Defendants will be directed to answer these challenges for the purposes of establishing liability for a damages.  The Court will abstain from entertaining Majeed's claim for injunctive relief.  An appropriate Order accompanies this Memorandum Opinion.


      **s/ Jerome B. Simandle**
      JEROME B. SIMANDLE
      Chief U.S. District Judge


Date:  **April 24, 2012**